IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ADAM ARTHUR, COLLEEN ARTHUR, | § | |
| | § | |
| *Plaintiffs,* | § | SA-21-CV-00602-FB |
| | § | |
| vs. | § | |
| | § | |
| LIBERTY MUTUAL PERSONAL | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Before the Court in the above-styled cause of action are Defendant's Opposed Motion to Strike Expert Logan Rodgers [#18] and Defendant's Opposed Daubert Motion to Limit and/or Exclude the Testimony of John McIntyre [#21]. The Court held a hearing on the motions on October 19, 2022, at which counsel for Plaintiffs and Defendant appeared via videoconference. At the close of the hearing, the Court issued certain oral rulings, which it now memorializes with this written Order.

This case is a first-party insurance dispute regarding a policy issued by Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual") to insure Plaintiffs' residence. Plaintiffs allege that the metal roof of their home was damaged as a result of a severe weather event involving wind and hail on May 27, 2020. Liberty Mutual denied the claim on the basis that the damage to Plaintiffs' roof fell under a policy exclusion for cosmetic damage. The exclusion at issue excludes "cosmetic loss or damage," which is defined in the policy as "any loss that alters only the physical appearance of 'metal materials' but . . . (a) does not result in the penetration of water through the 'metal materials'; or (b) does not result in the failure of the

1

'metal materials' to perform their intended function of keeping out the elements."   (Policy Exclusion [#21-1], at 3.)

Plaintiffs assert claims against Liberty Mutual for breach of contract, violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act, and breach of the duty of good faith and fair dealing.   Liberty Mutual removed the case to federal court on the basis of diversity jurisdiction.   Liberty Mutual now moves to strike or exclude the testimony of two of Plaintiffs' designated experts—public adjuster Logan Rodgers and engineer John McIntyre.   For the reasons that follow, the Court will deny the motions.

## I.  Legal Standard

Both of Liberty Mutual's motions at least in part arise under the standards set forth in Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).   In *Daubert*, the Supreme Court held that trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.   Subsequent to *Daubert*, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."   *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).   The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge."   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).   When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the expert testimony.   *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).

2

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See id.* at 276; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).  Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule."  Fed. R. Evid. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."  *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

## II.  Motion to Strike Rodgers

Plaintiffs designated public adjuster Logan Rodgers as a non-retained expert to testify, "among other things, regarding the market value cost of repairs required at 205 W. Castano, San Antonio, Texas."  (Pls. Expert Designation [#18-3], at 2.)  Plaintiffs hired Rodgers to inspect their property and represent them in their dispute with Liberty Mutual shortly after the occurrence of the storm event underlying this litigation.  (Rodgers Aff. [#22-1], at ¶ 4.)  Plaintiffs and Rodgers entered into an agreement on June 15, 2020, regarding the representation.  (*Id.* at ¶¶ 4–5; Claim Summary [#22-5], at 1.)  Rodgers inspected the property on July 17, 2020.  (Rodgers Aff. [#22-1], at ¶¶ 4–5; Claim Summary [#22-5], at 1.)  Approximately one year later, on June 15, 2021, Plaintiffs filed this suit in state court.

Liberty Mutual argues the Court should prohibit Rodgers from testifying as a non-retained expert at trial for two reasons: (1) the fee agreement between Plaintiffs and Rodgers

3

gives Rodgers a stake in the litigation such that he is impermissibly biased regarding the outcome of this case; and (2) Rodgers is unqualified to testify on the issue of causation as to the alleged roof damage or to opine on an interpretation of the policy exclusion and his opinions are unreliable.  Neither argument is a basis for excluding Rodgers's testimony.

First, the Court rejects Liberty Mutual's argument that the compensation agreement for Rodgers's services as a public adjuster requires his exclusion.  Liberty Mutual's motion is based on the Texas Disciplinary Rules of Professional Conduct, which prohibits attorneys from offering to compensate a witness contingent upon the outcome of the case.  *See* Tex. Disciplinary R. Prof'l Conduct § 3.04.  There is no such agreement in this case.  The agreement at issue is between Plaintiffs (not Plaintiffs' attorneys) and Rodgers and was entered into one year prior to the initiation of this litigation, entirely independent from the designation of Rodgers as a non-retained expert in this case.

The agreement reflects that Plaintiffs agreed to compensate Rodgers with "10% of RCV (Replacement Cost Value) of total insurance settlement, plus reasonable expenses in accordance with Texas Insurance Code § 4102.104."  (Agreement [#22-1], at Ex. A.)  This fee arrangement is part of Rodgers's standard contract, a contract that has been approved by the Texas Department of Insurance.  (Rodgers Aff. [#22-1], at ¶ 2.)  Rodgers's compensation is capped at 10% by statute.  (*Id.*)   The fee agreement is enforceable regardless of whether there is any ensuing litigation or whether Rodgers ends up testifying in such litigation.  (*Id.*)

None of the cases cited by Liberty Mutual in its motion address such an agreement.  At the hearing, the Court pressed Liberty Mutual to identify the legal basis for excluding a non-retained expert witness who entered into a pre-litigation agreement for compensation separate and apart from any possible trial testimony.  Liberty Mutual referenced several non-binding

4

cases, none of which are on point and some of which do not even address striking experts.  *See, e.g.*, *TQP Dev., LLC v. Merrill Lynch & Co., Inc.*, 2:08-CV-471-WCB, 2012 WL 13050554, at *4 (E.D. Tex. July 18, 2012) (denying request for sanction of dismissal of patent case pursuant to doctrine of "unclean hands" based on agreement giving expert witness contingent interest in proceeds of patent enforcement action); *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, CIV.JFM-99-2573, 2000 WL 976800, at *1–2 (D. Md. June 19, 2000) (granting motion to dismiss on the basis that plaintiff lacked standing because claims were based on an assignment that was void because assignment was part of a contingent fee witness agreement violative of state public policy).  And the few cases that do address striking an expert witness based on bias involved agreements directly contingent on the outcome of the litigation in which the expert had been designated to testify.  *See, e.g.*, *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 425 (Tex. 1996) (addressing possible disqualification of plaintiff's attorney under Texas Disciplinary Rules for testifying as an expert witness for plaintiff while being compensated on a contingency basis dependent upon plaintiff's success in litigation); *Cosgrove v. Sears Roebuck & Co.*, No. 81 Civ. 3482 (CSH), 1987 WL 33595, at *1 (S.D.N.Y. Dec. 21, 1987) (striking retained expert who entered into an impermissible contingent fee agreement to be compensated solely based on whether plaintiff obtained settlement because the arrangement violates the New York Code of Professional Responsibility).

Again, Rodgers did not enter into an agreement to provide testimony in exchange for proceeds of this litigation.  He agreed to serve as a public adjuster for Plaintiffs a year prior to litigation and to be compensated based on the payment obtained from Liberty Mutual.  The use of public adjusters is not an uncommon practice, and the adjuster's agreement here was blessed by the Texas Department of Insurance; despite this, Liberty Mutual did not cite single case where

the public adjuster was stricken and prohibited from testifying because of the contingent nature of a pre-suit agreement entered with an insured.  The Court declines to strike Rodgers on this basis.  Liberty Mutual may attempt to discredit Rodgers at trial by cross examining him on any bias flowing from the agreement with Plaintiffs.

Secondly, Liberty Mutual's arguments regarding Rodgers's qualifications and the reliability of his testimony are not grounds for striking his testimony.  Again, Plaintiffs designated Rodgers to testify on the market value of repairs to Plaintiffs' metal roof.  Rodgers is a licensed public adjuster in Texas, Louisiana, Colorado, Georgia, and California and has worked in the State of Texas since 2012.  (Rodgers Aff. [#22-1], at ¶ 2.)  In addition to his public adjusting work, Rodgers also works as an appraiser, umpire, and retained expert witness.  (*Id.* at ¶ 3.)  Rodgers is qualified to testify as an expert witness on market appraisals for roof replacements.

As to any possible testimony by Rodgers on causation or policy interpretation, he has not been designated on these topics, and Plaintiffs confirmed at the Court's hearing that they have an engineer designated to testify on causation and do not intend to elicit testimony from Rodgers on this issue.  It seems that Liberty Mutual's concerns about the scope of Rodgers's testimony are a result of a line of questioning pursued at his deposition by Liberty Mutual's attorney, not Plaintiffs.  Liberty Mutual asked Rodgers at his deposition to opine on whether the roof had been functionally damaged by the storm event.  (Rodgers Dep. [#22-4], at 86:24–87:9.)  In response, Rodgers testified that he believed the damage to the seams means that the roof has been functionally damaged and that damage to the seams could affect the life expectancy of the roof.  (*Id.*)  If Liberty Mutual believes this testimony is beyond the scope of Rodgers' expert designation and his expertise, they should not ask him his opinion on these matters at trial.  The

Court is not inclined to attempt to prophylactically limit Rodgers's testimony under these circumstances and out of the context of his actual trial testimony.  The parties are encouraged to attempt to reach an agreement that might address the proper scope of Rodgers's testimony, and if no agreement can be reached, Liberty Mutual may, of course, file a motion in limine on this topic.

## II.  Motion to Exclude McIntyre

Plaintiffs designated McIntyre as a retained expert witness to testify, "among other things, regarding the inspection, analysis, reports, investigation, and evaluation of Plaintiffs' property damage, the cause and origin of the roof damage, the questions of functionality of the roof damage, and the scope of repairs required at 205 W. Castano, San Antonio, Texas 78209." (Pls.' Expert Designation [#18-3], at 1.)  McIntyre inspected Plaintiffs' roof for hail damage and opined that there is widespread roof damage to the house as a result of the May 2020 storm. (McIntyre Report [#25-1], at 6.)  McIntyre observed frequent strike dents to the roof from hail, some of which breached the protective roof finish, as well as bent seams and gutter damage. (*Id.*)  According to McIntyre, the roof "is in functional failure and no longer provides the intended protection to the remainder of the structure," such that the roof should be removed and replaced.  (*Id.*)

Liberty Mutual argues the Court should exclude McIntyre's testimony because (1) it is not reliable or relevant under *Daubert,* and (2) his designation as an expert does not satisfy the requirements imposed by Rule 26 of the Federal Rules of Civil Procedure.  Neither of these arguments has merit.

As to the alleged Rule 26 violation, Liberty Mutual argues McIntyre failed to disclose all "facts and data considered by the witness" or his past litigation experience because he did not

provide a list of all cases in which he provided deposition testimony and did not disclose the magnified photos he relied upon in reaching his conclusions regarding hail damage to the roof. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii), (v).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiffs indicated in their response that they have supplemented their expert disclosure with a list of depositions taken of McIntyre in past litigation.  At the hearing, the Court asked Liberty Mutual to identify any harm flowing form the failure to previously disclose this list.  It could not do so.  The Court therefore finds this delayed disclosure is harmless and not a basis for striking McIntyre's testimony.

As to the photos, Plaintiffs emphasized that the magnified photos are closeups of previously disclosed photographs relied upon by McIntyre in reaching his conclusions.  Liberty Mutual conceded at the hearing that the alleged Rule 26 disclosure violation as to the photos is not really the issue.  Rather, Liberty Mutual argues McIntyre should not be able to testify regarding the magnified photos because he could not identify in his deposition precisely what area of the roof the photos depict.  This is an issue for cross examination, not wholesale exclusion of McIntyre's testimony.

Liberty Mutual's final argument is that McIntyre's testimony that the roof is in functional failure is not relevant or reliable as to the policy's cosmetic exclusion because McIntyre conceded in his deposition that there is no evidence that the roof is leaking or failing to perform its water-shedding capacity.  Additionally, Liberty Mutual faults McIntyre with failing to distinguish between the cabana roof and the roof of the main structure.

The cosmetic exclusion addresses two types of functional, as opposed to cosmetic, damage: penetration of water through metal materials or failure of metal materials to perform their intended function.  (Policy Exclusion [#21-1].)  McIntyre's concession only pertains to functional damage based on water penetration.  This concession does not directly address the second type of functional damage identified in the cosmetic exclusion.  There is no relevancy issue.  McIntyre's testimony is relevant to the claims and legal issues underlying this case, which includes whether Liberty Mutual is able to satisfy its burden to demonstrate the cosmetic exclusion applies.  McIntyre intends to testify that the damage to the protective roof finish, bent roof seams, and gutter damage, all of which resulted from storm damage, have compromised the roof's ability to perform its intended function.  Liberty Mutual has not identified a specific reliability challenge based on flawed methodology as to this testimony.  Finally, any failure of McIntyre to clarify in his report whether the damage pertained to the main structure or the cabana can be addressed at trial by asking for clarification from McIntyre during his testimony. The Court declines to strike the expert.

**IT IS THEREFORE ORDERED** that Defendant's Opposed Motion to Strike Expert Logan Rodgers [#18] and Defendant's Opposed Daubert Motion to Limit and/or Exclude the Testimony of John McIntyre [#21] are **DENIED**.

SIGNED this 24th day of October, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE